Case number 12-61842, Paul Abramson v. Chuhak & Texon. Okay, would the lawyers please approach and introduce yourselves. Stephen Barberosian on behalf of the plaintiff. Corey Berman on behalf of defendant Appalichua & Texon. All right, for the plaintiff, you're going to reserve some time for your rebuttal. Yes. Sure. May it please the court, I want to start by saying that I think our briefs lay out the issue, I think, fairly well. I don't know if the court is more inclined to proceed with questions or if the court would rather I just start talking. Well, let's start with basis. Your client signed a contingency agreement, signed a settlement agreement, and knew that he did not have to sign it. Since it was a mediation, he could walk away. The firm agreed that you won't owe us a cent if you walk away and not sign the settlement agreement, and your client still signed it. Correct, Judge. I think the problem here is that some of those issues are really the way that the defendants have stated them, where they're saying that, you know, they're assuming he knew certain things or that he was fully aware of how the file had been worked out. He was a sophisticated lawyer. Pardon? He was a sophisticated attorney. The plaintiff? Right. He was the son of an attorney. Go ahead. That's okay. So I think the issue really has to do with, you know, when he agreed to those terms, you know, he was under the impression that, and this is, I can't fault the defendants for the father pulling a fast one. I'm not going to say that it's their fault that he did it. The problem is that when they knew this clause was in there saying, you're never going to be able to talk to your father again, they also knew there was reconciliation going on, and we've pledged that they told him, look, you should continue doing that. You should continue building the relationship. So how does that clause get into that settlement agreement? And then he asked them, look, just tell me this, and we pledged this. Am I going to be able to, or I believe the statement was by Mr. Feinberg that he would be free to do anything he wanted with respect to continuing his relationship with his father. And on that basis, he signed it. It shouldn't be a problem. Everybody saw him leave with his dad. The question is, why do you have that clause in there with respect to the father when you see that it is being violated immediately? A lawyer has got to see that. You're giving a staffing permit. Yeah. Where's the fraud here? Well, Judge, the – What did this law firm do wrong? Well, I think that we're under the Klozewski case, the Klozewski case. I mean, what's in your client's subjective manifestation of his thought process is not relevant to anything. The question is, what fraud did the defendants commit? And I think that it is based on the overall, the acts and the statements between what was in the fee agreement with respect to what they would have available to investigate the case, to secure witnesses in view of the Dead Man's Act, where he would not be able to testify to his relationship with his mother. I still don't see where the fraud is. You're claiming fraud in the inducement here. You're claiming that a law firm committed fraud. That's pretty serious allegations. Right. But I don't see where it is. Okay. Well, I think that it's not as simple as just one statement, and I think that's why the Klozewski case is important because it has to do with saying, look, we can get a, you know, their real view of the case all along was this is a nuisance case. We've got to get this thing to a quick mediation and get rid of it. The problem was that he came in and he gave them this information about this is a huge estate. I've got all these, you know, I'm like, I can't pay hourly. Will you take it on a contingency? They come back and say, well, the board might take it for 50% because we don't typically take this case on a contingency basis. And they came back and said, yes, we'll do it. And between the increase in the return, I think there's an inherent statement in that there's going to be an increased risk to the firm, meaning they already have a $15,000 cost retainer, expense retainer. They're not going to lose any expenses. So why are they saying we're going to have to actually get more of an interest in the case if we're going to take it on because there's risk that the attorneys and the staff are going to be putting time in that's not going to be remunerated. Isn't that inherent in the fact that this is a large major law firm that doesn't like to take contingency cases and they like to do things on an hourly basis? And if you want to have us, I mean, you're talking about inferences. I mean, isn't it just as easily to infer that if you want to have us do something that is against what we ordinarily do just for you, we're going to want more. We want a bigger upside. What's fraudulent about that? Here's what the difference is. If they had handled the case even as a more minimalist way than they did, part of the problem is that some of the most fundamental things for when you've got a will contest and you're claiming that there is a lack of testamentary capacity, there are no medical records obtained to try to prove that up. And there are no depositions taken of anybody on the other side. Those things may go towards whether there was legal malpractice. But what does that have to do with fraud? Well, Judge, I think the issue is that when their initial view of the case was this is a nuisance case and that's how they were going to treat it. What evidence do you have of that? What evidence do you have that this firm made a determination that this was a nuisance case but that they misled him to think that it was more than that? Just because they charged a higher contingency? That's not the only reason. I think it's because of the way that they handled the case after they took it on, where they just didn't do some of the most fundamental basic work that they would do. If they had come in here and said, look, we did a full round, we did full written discovery, we got documents to challenge the $25 million alleged value of the estate, if those types of things had been done, then you wouldn't be able to come in here and say, well, maybe they didn't see it as a nuisance. The problem is the work that they did was so minimal, and they went to this pretrial conference without doing anything to strengthen my client's position before they went in there. They had a million dollars. And that's what the mediation judge recommended. That's correct. But I think the problem with that is that we were talking about a $25 million estate value that my client was led to believe had been vetted. And did the mediation judge have that fact before him? I'm sure the client told him it was $25 million, at least. Well, my client never said that. My client actually, and defendants attached to their pretrial memorandum a summary that my client had prepared stating that he estimated the estate value was on the order of $75 million. Now, granted, maybe he's wrong. But the bottom line is when you've got your client and you're certifying, I believe under 137 this is true and correct. I don't know anything that I would not believe this guy. This is what he says. I'm going to attach this to my pretrial memo. And then you find out that he's vetted a $25 million stated value, and the attorneys say, that's good enough. And he's going, wait a minute, what happened to $75 million? And they're saying, no, whatever they do not to do that work. He even asked about doing that work to have a forensic accountant come and challenge it. They never even got the record so they could see or even consult with an expert to say, does it even look like a ballpark? This is close. Is it worth doing a forensic? They didn't do anything. They never even got those records. That's where I thought this is so unusual that you would just take this case and do the total minimum, produce your own client, not take the defendant deposition, and then go right to a mediation. They were ready to take $200,000 at the end of the first day of mediation, and what we have pled is that it was my client's insistence on coming back the next day that hastened the increase to a million dollars. So I understand they want to take this, hey, we got you a million bucks. Not really. You were ready to walk with $200,000. I think something else is important here. I think Your Honor had said earlier that they had claimed that he knew exactly what he was getting out of the settlement, and I think the bottom line is he didn't know that at that time when the settlement was being prepared. Well, one final point. How do you get to rescission? You argue rescission. Is he going to give that half a million back?  I think rescission, I think it's one of the things that I talked about with respect to, you know, returning them to the status quo is going to be very difficult, but I think it's actually impossible. And I think, I'm sorry? It's good. Okay. But I think that it's impossible because of the nature of the transaction, and this is really what was talked about in the, excuse me just a second. See, the problem that you have is that you're claiming fraud, not legal malpractice. And in fraud, you have to show that there was some misrepresentation, some statements that were made. You don't show that in all of your cases. Well, I think what we show is that under the Glazewski case, that the terms of the fee agreement, the increase, the increase return, all of these things have a reasonable inference that they were done specifically. Yeah, but don't you have to plead fraud with particularity? You're talking about inferences. Right. Well, again, I think I'm relying on the Glazewski case that dealt with a similar situation in that you didn't have a specific statement where something was X or Y, but it was, well, this statement was made, and then there were indications in this conduct, and all of those things combined to say, as a whole, that's a false statement. So for fraud, I really think that's, I'd love to say that I've got more than that, but that's what we've got on the fraud count. I think what is... You see, that's not enough. There's no case law that will support what your theory is here. All right, well, with due respect, I thought the Glazewski case did, only because I think that that had to do with, there wasn't a specific statement. I believe that's the one where there was a... The claim there was that the plants were charged, overcharged, they were charged premiums for coverage that had no value, but there was never a specific statement of saying that, you know, there was an act there that, on its face, showed fraud. You don't have such a thing. You don't have anything that shows fraud, except what's in somebody's mind. They didn't promise, this firm didn't promise a recovery, did they? I mean, the case that you're citing is a case where it's an insurance situation where there's really no coverage. That's the fraud. But if you want to analogize it for this situation, you'd have to have a situation where they promised a recovery. They never promised a recovery, did they? No, they definitely did not. They didn't promise a recovery. I think what their words and actions combined to state was that they saw the case as something other than a nuisance. And so by making those affirmative statements as a whole, as they came together as a whole, was a statement that wasn't true. And I also think there's the omission of the fact that they saw the case as a nuisance and they never told anybody. So you think that if a client goes to an attorney and says, I need legal representation because I just lost my last attorney, for whatever reason, and a client goes to an attorney or a firm and says, I need representation, and the firm says, yeah, you've got a good case. That's fraud? Because that's what you're saying here. You've got a good case. We'll handle your case for a 50% contingency fee. And then it turns out to be that they didn't really think it was a good case. That's fraud? Well, I think if you're saying that, if you're representing. By the way, fraud can't be an opinion, can it? It's got to be a fact, right? That's correct. Okay. So if an attorney says, hey, you've got a good case. We'll handle it for you. Isn't that an opinion? Isn't that an evaluation? That's true. Okay, well, is that a fact, an evaluation? That would not be, no. But I don't think this. That's fraud? Because I think this has to do with what the terms of the agreement were and what they actually did in representing him and how they actually handled the case. So those, it's not just a matter of there was an opinion. There was a matter of they're not putting anybody on the case. They're not getting medical records. They're not getting independent witnesses to overcome the Deeds Advance Act. They're just not doing anything. They're saying, let's do a minimum, get to the settlement conference. And I think that. Well, again, that might be legal malpractice, but it's not fraud. It's certainly not fraud and inducement. You're saying that they didn't do things that they should have done. Well, you know, did they promise they were going to do those things in advance? And if they did that, isn't that promising to do something in the future? Well, I think they promised that. Do you think that recognizes fraud in Illinois? Well, it is if there's a scheme to defraud. Oh, now this law firm was involved in a scheme? Well, they had a big partners meeting before the guy came in and said, hey, let's get this guy. No, but I think when you've got somebody saying, hey, you know, maybe this. Did you allege a scheme to defraud? I don't know if we specifically used that word. I might have. I think that's a reasonable inference that when you look at all of this together, that there is a scheme behind the whole thing. But, again, I really think it is the omission of, more than anything else, of the nuisance view of the case that it was the type of case that required an absolute minimal workup and as early a pretrial settlement conference as one could get. I think they had a duty at that time to say, understand, we're not going to be taking bets all over the place on this. Your case is not good. We don't know. The problem is not necessarily. I'm not going to give you an opinion. The problem is we're not going to put all this time in. I know the agreement says that we can hire experts, and we're taking $15,000 from you to fund everything, but we're not going to do any of that in this case. And I think that when that's in the agreement, it looks at that and says, yeah, I've got this firm that's going to do all this stuff for me. If they're sitting there going, we're not going to do any of that stuff that's in that agreement, I think it is fraud. But I also think that the declaratory judgment action was preserved in our amended complaint. And I think that the declaratory judgment action is one that was improperly dismissed and hastily dismissed because you had a situation here where the contract was for prosecuting this claim of assets. They get to the settlement. They come up with a settlement agreement that's got this term in it. And within weeks after the settlement, he's getting calls to cease and desist, contacting his father. We've plugged that the defendants continue to tell him, just don't give up. Keep doing what you're doing. And they're even contacting one of the prohibited parties on his behalf. So when they do all of that and they continue the representation, then all of a sudden they realize this isn't stopping. They're going to keep coming back with these cease and desist letters, and they go, we don't represent you anymore. And they walk away. So the question is, did you still represent them up until that time? And they were acting like they did. They were addressing something that they put into the settlement agreement during that prosecuting that claim of assets. So to say that all of a sudden they create a mess and they walk away and say, we don't have to clean it up. I think you do. And I think the fact that you came in and tried to clean it up ties you back to that term being in that settlement agreement. And therefore, you've got this actual controversy where, well, did we represent him then? Didn't we represent him then? And if they withdrew while they were still representing him, their own contract forfeits the fee. Well, what's the declaration that you were seeking? I'm sorry? You were looking for a declaratory judgment. What's the declaration you were seeking from the court? We would be seeking the declaration that the defendants still represented the plaintiff when they withdrew and that under the terms of the contract that withdrawal invokes the forfeiture provision for the fee. Those are all facts that occurred in the past, right? What's forward-looking? Doesn't a declaratory judgment have to be forward-looking? Well, all it has to do is cast uncertainty of the plaintiff's rights. Rights in the future. The party's positions here have been fixed, right? Right. The firm said, we don't represent you anymore. And the plaintiff said, well, you represented me at this particular time. That's all past conduct. That's all breach of contract stuff and malpractice stuff. What are you looking for from the court for guidance as to how to act in the future? Because that's what declaratory judgments are about. Right. And I think there are a couple pieces to this because when the future treatment of that clause and his future conduct with respect to trying to contact his father and those things, he doesn't know, look, I've got to know what the situation here is, and I've got to know before I start taking actions on it. I've got to know before I start suing them and going all the way through to trial. So you're looking for a declaratory judgment as to how to act in the future with regard to his father. Is that what you're looking for? No. I'm sorry. With respect to how to act in the future with respect to the order, the dismissal order, and the settlement agreement that his attorneys prepared. How does that – why would Chuhiak and Texan be a defendant with regard to that declaratory judgment? Court, tell me how to act in the future with my father. Why would the law firm be involved in that litigation? Well, I think what it's saying is tell me how to act. Wouldn't the father be – wouldn't it be the plaintiff against the father, the parties to the settlement agreement? If you want to have a declaratory judgment action, how should I act towards my father, Judge? You bring in the father, you bring in the plaintiff, and you say here's the settlement agreement? Well, there you go. Why would Chuhiak and Texan be the defendant – I don't know if I'm saying it right – Texan being a defendant with regard to that declaratory judgment? What interest do they have? Well, I think the interest would be that when my client has gotten these cease and desist letters, he tries to tender to Chuhiak and Texan to defend against those claims because they arose out of their work on the case and the terms that they put in the settlement agreement. So he's saying, are they still my attorneys so that when I get these cease and desist, I continue to give it to them? They've already fixed their position with regard to that, haven't they? Isn't that what the case law says? If the parties have fixed their position, then it's not right for declaratory judgment? Are you asking the court to say to Chuhiak and Texan, you have to continue to represent them? Is that what you're asking for? Or effectively, does he need to hire other counsel to now defend against what is arising out of what his attorneys did in that case with respect to that settlement? And I guess I'd just like to wrap up on the issue of the breach of fiduciary duty, breach of contract claim. Because I think that there's been a lot of talk about how this is really a legal malpractice claim. And I think that there's something that's very distinct about it. And first of all, you've got, this isn't a negligence claim. The claim is that they did something intentionally by putting their own people in jail. They put their own pecuniary interests ahead of his by saying, put whatever we need to in that fee agreement. Do whatever we have to to get out of here and get our fee. And didn't worry about whether that's something he understood or whether he knew that, well, you can try to contact your dad, but they might come back at you. They let that go. And they did that because they were like, I just want to get our fee and get out of here. And when they do that. Well, he signed a settlement agreement that he wouldn't contact his father. His father wouldn't contact him. Well, I understand that, Judge. But I think the problem is that he was advised by his attorneys to sign that. And he specifically was told, you will be free to continue contacting him and doing whatever you want, regardless of signing the agreement. And so he said, okay, I'll sign it on that basis. But, you know, I think the fact is that when you see. I mean, if he didn't like the settlement agreement, you know, to show good faith, the first thing that should have been done is to attack the settlement agreement and return the money. Well, I. I mean, that's the way it's normally done in my many years of practicing law. Right. Well, I think, again, that that would be something more akin to a legal malpractice claim. Because then that's really more what you're trying to do. Well, here he takes the fruits of what the settlement was, and now he wants more money. He doesn't understand that when you sign the settlement, it's over. The fat lady has sunk. There's nothing more to do. When you give up your rights, you give up your rights. People know that. Well, I understand that, Judge. I just. I think that the issue here is that. You see, that's the problem. There isn't any issue. You see, you want to create one, but you're unable to do it. Well, I think that there is an issue on the breach of fiduciary duty. I think that the placement of this clause in this contract under the circumstances, for an attorney to leave that in there indicates they were just putting anything in there they needed to to get the other side to say, okay, we'll sign it so they can get their fee and get out of it. Well, I know that's, you know, that's your view of it. But even if we take your view and we don't even listen to the other side, I don't see where you have been able to allege a fraud claim. Right. That's the problem, or that you could ever, ever allege a fraud claim. Well, and I think that's why I'm trying to focus on the breach of fiduciary duty issue, because this really goes separately from the fraud claim. Well, what duty did they breach? They put their own pecuniary interests ahead of his. Well, I mean, you know, that's the conclusion. How was he damaged by that? What was, what proximate, approximately, what damages were approximately caused by the insertion of this no-contact clause? It's more than the insertion of that clause, but I think the insertion of that clause is evidence on what they were really interested in doing, that they were not, they weren't concerned about his interests, they were concerned about getting their money. And I think we haven't, we've put enough facts that the reasonable inferences follow from that. I don't believe we've put all conclusions on that issue. And I think that. So how was he damaged by this? What damages were approximately caused by this breach of fiduciary duty? The unfair and excessive fee. That would be, that would be what was lost. How was that, how does one flow from the other? Because if they have, if they have represented his interests adequately, and they haven't. If they had represented his interests adequately, he wouldn't have had to pay the same fee? I mean, don't you have to say that as a result of the breach, he incurred a damage? So what damage did he incur that he wouldn't have incurred in the absence of the breach? Because that's the fee. Fifty percent is the fee. So my question to you is, what damage is there that he would not have incurred had they not breached? Well, he, they would have had, he wouldn't have, they had done the work to justify the fee. He would have paid a fee that was justified by the way they handled this case. The same fee. Pardon? The same fee. Well, yes, the same fee, but for a lot more work. So his damage was that he didn't get enough work? Is that the damage? That's part of it. Because they took in money. How do you quantify that? Well, I mean, if we want to get into difference in case value as like a legal malpractice claim, then it could be the difference. Again, this isn't a legal malpractice claim. Right, right. I mean, and quite frankly, I don't know that you could get a fee in legal malpractice. I don't know that you could recover a fee in legal malpractice. All the cases that I've seen on them are it's breach of fiduciary duty against the attorney for claiming the fee is unfair. So his damages then are that he didn't get enough work? What's his damages? His damages are the payment of the fee for not, for getting a minimalist workup of the case that just took him into a pretrial. It's just the same fee he was going to have to pay anyway, right? He would have paid the same fee either way, but he would have had much more work done so that his case would have been much stronger when he got into that pretrial, in that settlement conference. And he wouldn't have had his father coming after him on this no contact clause if they had said, hold on a second, there's this clause in here we might want to take out for your dad because you guys are talking and I don't want to create a problem. But my point is that they said, I don't care about that. Let's just get him out of here and get our money. And my client was not aware that they hadn't worked up the file until after it was over. So his damages is that he has to live with this no contact clause? That's part of it. This is a tort. Breach of fiduciary duty is a tort. Right. So you're saying that he was damaged as a result of this tort by having to stay away from his father? How are you going to compensate him for that? I don't know how you quantify that, but I think that in terms of the fee, I think that the unconscionable fee cases or the unreasonable unfair fee cases all talk about this. All breach of fiduciary duty is the basis that those claims are brought against attorneys. And the case law said that whether that fee is excessive or unfair is for the jury to determine. And I think that with respect to the allegations and the reasonable inferences that flow from those in my client's favor, he can prevail in front of a jury on that issue. I guess you could make that argument on any contingent fee. Somebody could die at a hospital and a lawyer takes the case and the hospital decides before he even gets the case they're going to pay $10 million. They call him up the next day and they give him $10 million, but he's got a contract in accordance with the medical malpractice act and he gets millions of dollars for doing nothing. So therefore a lawyer shouldn't receive those fees. Is that what you're saying? No, I think that's a bit of a different situation because I think there is, with all due respect, I don't know that that would ever happen. I understand the point that you're making, though. No, it happens all the time. Well, I think the problem is that what the lawyer has to do in actual litigation versus what he has to do pre-litigation are two different questions. So I've prepared cases like that, not giant ones like that, but I've prepared cases like that where I've done a ton of work before I even thought of filing a complaint and I've gotten settlement that way by getting specialists to the other side, getting an insurance courier to consider the case. Sometimes you don't even have to. There are cases. As you practice longer you may be lucky and get one of those. But the question is, that's not broad. It's not even legal malpractice. A lawyer has an agreement set forth in the agreement. There's a settlement agreement. Everything is set forth in the settlement agreement. And now your guy wants more money. That's all it looks like. All right. Well, why don't you save some time for rebuttal. Okay. Good morning, Justice, Your Honors. I just want to touch on a few points that were raised in counsel's argument. One of the issues that Justice Palmer raised was in the declaratory judgment action and what was being sought. Number one, Justice Palmer, you're exactly right that the rights were fixed. But moreover, they were not seeking concurrent representation, ongoing representation. What they were asking for a declaration of was that plaintiffs be relieved of any obligation to pay attorney's fees. That's what they were asking. So it was exactly as the court pointed out, something that was in the past. This was not something that was appropriate for declaratory relief. I think what came through in the argument, as came through in front of Judge Mikva, is that this is not a legal malpractice case. The trial court specifically said, if you have facts that could support legal malpractice, bring them. Allege them. And Mr. Abramson was given that opportunity. And his counsel specifically said on the record, quote, our claim, this is not, quote, it's not a malpractice claim. They are not seeking any sort of legal malpractice claim. With respect to the fraud counts, again, this is not fraud in the inducement of signing the settlement agreement. This is, the claim is, fraud in the inducement of signing the contingency fee agreement, the fee agreement with Chulak and Texan. There were no facts alleged. And to the contrary, there could be no facts alleged because there was no guarantee about the outcome. And that was specifically said in the agreement, that there was no guarantee about the outcome. There was no guarantee that any experts would specifically be used or that any particular processes or procedures would be used. In fact, the claim was taken subject to additional investigation. So there are, were none and there could be no facts that would support any of the fraud claims, the rescission which is based on fraud or the fraud in the inducement claim itself. How about the $15,000 expense? Was that used at all or was it returned to them, that portion that wasn't used? You know, I can only base it, we can only base the facts on what's alleged. We, and I don't know if that was specifically alleged. I would expect that any credits that would have been applied as of the time of the payment of the legal fees after the settlement of the case would have been applied. So if $15,000 was not used and was supposed to go back to the client, then that would have been credited. That was not pleaded in any specificity. I got to tell you, certainly not the litigants in question here, but I'm sure that in the practice of law, you know, there are lawyers looking for business all the time. And clients come in and they say, I got this case. And lawyers who are looking for business, you know, go, hey, you've got a great case. I can't wait to represent you. We're going to do great. And then, you know, it turns out that it's really not such a great case. And, you know, what happens, happens. If we were to say that's fraud, there would be a lot of lawsuits filed up and down LaSalle Street. I got to tell you, I'd hate to open that door. I tend to agree. And as a point out, that's not the situation in this case where there was an emergency situation, I guess. Prior counsel withdrew. The probate claim needed to be filed quickly. Chewick, Texas said we'll represent you on an hourly basis. We don't do it on a contingency basis. And the parties are free to contract. And they said, okay, if you want us to represent you, we'll represent you based on this. I don't mean to imply. That's the extreme example. I don't mean to imply that that's the case here. But since there isn't any specificity with regard to any fraudulent statements as to, you know, what's going to happen in this case, just the idea of taking the case in and saying we'll do it 50%, all of a sudden it's a fraudulent statement that this is a great case, I think that's a door that nobody really wants to open. Right. You get into, of course, a slippery slope of if you're looking at 50%, 45%, 40%, 30%, 33%. And do we want trial courts to all of a sudden be looking at all of these agreements? Did you do what, you know, an amount of work over a certain amount? I think we certainly do not want to burden trial courts with that type of oversight, unless it's called for in a few petitions or something where it's statutorily mandated. There were no facts that the trial court properly found that there were no facts either alleged or that could be alleged because the plaintiff was given two opportunities to do it. He specifically indicated that he was not pleading legal malpractice. He also specifically pleaded that his father had a deep-seated hatred of him. There were facts that the court had of record that absolutely supported the finding that the initial complaint was properly stricken and the First Amendment complaint was properly stricken and the case was dismissed with prejudice. There were no facts and there was no tendered pleading even offered to the court that might supply any different facts. I would ask the court to affirm the trial court on all of that. What about this allegation that the plaintiff was misled by his counsel to believe that, you know, even though this clause was in the settlement agreement, that he was going to be able to continue to work on establishing a relationship with his dad? Well, I would point out two things. Number one, I would point out the fact that every page of that settlement agreement was initialed by the parties. Mr. Abramson, this is in the Appendix A-102, Mr. Abramson initialed the no-contact clause and the no-contact clause is Section Paragraph 8 right at the top of that page. Very clear. Very clear language. Number two, parties can waive contractual rights and if his father wanted to communicate with him, God bless them. If that was something that his father wanted to do, then they could do that and they could waive that. But if his father didn't want to do that, then Mr. Abramson is bound by the language that he saw and he specifically initialed. He knew about it. There's no question about that. So that does not support any sort of claim in this case. If there are no further questions, I'd ask the Court to affirm. Thank you, Your Honors. Uh-oh. I guess I would follow up only that if the Court were to find that the issues about the declaratory judgment were passed, we also stated a claim for breach of contract with respect to the withdrawal during the representation without forfeiting the fee. So even if the Court is going to say, look, it's after the fact, you can't get deck judgment on that, we've plotted also as a breach of contract where we're saying that, look, they withdrew while they represented us, but they didn't forfeit the fee. That's a breach of contract. And quite frankly, that is another thing that would not be recoverable under legal malpractice, is that that is a pure breach of contract action if it's not a declaratory judgment. Isn't there a provision in the fee agreement that specifically deals with subsequent representation? I think the only thing it talked about was appeals and estate planning. I think it was the only, it said that it would not extend to appeals and estate planning. I think that's all it said. So it didn't say anything about, you know. It kind of looked somewhat akin to, you know, a divorce case. And when the divorce case is over, and then there's post-judgment fighting over no contact, orders of protection, things like that. Are you saying the firm's on the hook for all that? Well, I think that was one of the things that I think Judge Mitka pointed out when she dismissed the first complaint, was that she said, you know, this whole thing started over a year later, and that was not true. It started almost immediately after. And I understand what Your Honor is saying, that, you know, well, how long does that go on? But I think that where it started immediately after, and it arose out of the settlement agreement that his own attorneys approved, you know, I think that is, I think it's an unusual set of facts. These facts are unusual, and I think that if there's any question on that, it's got to be resolved in my client's favor as to what the requirements were and whether the representation continued. These all seem to be very fact-intensive questions. I also would just like to point out that, you know, if the court was inclined to say, you know, the only claim you could possibly have would be for legal malpractice, I believe that our fact pleadings, and we've argued this in our brief, would support legal malpractice if the court said that's the only claim you got. I think we've pled sufficiently to come under legal malpractice. I think the point was that wasn't our intent from the beginning. And, again, I don't know in legal malpractice, you know, I'm not, I think it's the difference in case value, and I don't know if there's a way that you can say legal malpractice entitles you to some kind of a return of the fee. And I also, I don't know that it's entirely clear that my clients initialed every single page of the settlement agreement, because I think, I mean, there's, like some of these pages, most of them only have four initials on them, like 14, 13, they have four initials, but there are five parties. You've got Floyd, Ann, Amy, Rachel, and Paul, but there's only four, a lot of these, there's only four initials. Now, I don't know if that's attorneys, but I think the problem is, you know, his initial would be PA, and I don't see that anywhere on the No Contact page, or even on the other pages. There is a, one, two, three, there's a fifth one on page six, could be a PA, I can't really read that, but I think there's a question on that, too, as to whether he actually really did initial each page, or if he never even, you know, So I think if it's not a declaratory judgment action, I think that we've pled a cause of action, at least for breach of contract, and not obeying the terms of their own agreement. But one thing I did want to point out, too, that I think Justice Taylor had said at the beginning, that, you know, there was this talk about how he had, that he, that there were, all this discussion about what he knew at the time of the settlement agreement, and that, you know, there have been a lot of claims made by the defendant in this case about just kind of contrary facts, and I think contrary facts are great for a jury, but they don't make a difference when it comes time to decide on whether a complaint has to be dismissed or not. So, if we can just have a minute. I think another point that needs to be made is that, you know, if there had been some workup of the file during which defendants were learning information that was hurting the case, or where they said, you know what, we got medical records, and guess what, it doesn't show lack of testimony or capacity, we called your independent witness, she didn't say anything that you said, now all of a sudden it's a nuisance case. And I would be in a very different situation if that was the case. But that they never learned, if anything, in their handling of the case, that would change or, you know, give them some sort of basis to say, oh, wait, wait, now it looks like a nuisance. Because they treated it the same way from the beginning. So let me ask you this, what would you like us to write here? What should we write? Well, I mean, I think the best result for us would be the declaratory judgment. But, I mean, I understand where the court is saying that, you know, I don't think it's a, if it's anything, it's a breach of contract. So I would ask for at least a reversal on breach of contract. I'd also ask for a reversal on breach of fiduciary duty for the reasons that I've stated here. I understand the court's feeling about the fraud claim. And I know that it was, you know, we didn't have your typical, I'm going to say something and we can show that it's not true. So, you know, obviously I'd like to see that reversed too. But I really think that it comes down to breach of fiduciary duty and a breach of contract. I think that we've at least stated a cause of action for breach of contract with respect to the provisions in that agreement and the terms of the withdrawal. And so I would ask for a reversal on that. And, again, if the court finds there's nothing other than legal malpractice, I think I would ask the court to reverse and allow us to replead, not to change our fact pleadings, but to state the claim as legal malpractice. But, again, I think it's a... You don't have any allegations about malpractice anywhere. Well, I think that the... Malpractice is a deviation from the standard of care, I hear. Right. I think the allegation that they had done things, had put things in the settlement agreement without regard for my client's best interests, I think that it would be, if it's an intentional act, it's a negligent act, and it's not going to satisfy the standard of care. If somebody's done something intentionally against their client's interests, that's going to be malpractice too because it's an intentional act. If somebody had just made a mistake and not done something, that's malpractice. But if you intentionally do something, that's certainly not going to meet the standard of care as well. Okay. All right. Thank you. Well, thank you very much. We will take this case under advisement, and the court is adjourned. Thank you, counsel.